# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

IN RE:

ROGER W. SODERSTROM, SR.; and
TANSEY M. SODERSTROM,

      Debtors.

---

HORIZONS A FAR, LLC,

      Appellant,

vs.
                                              Case No. 6:12-cv-1164-Orl-37
                                                        consolidated with
                                                    Case No. 6:12-cv-1165-Orl-37

RICHARD WEBBER; PLAZA N 15
PARTNERS, LLC; and SCOTT R.
BUONO,

      Appellees.

---

## ORDER

This cause is before the Court on the following:

1.     Brief of Appellant (Doc. 39), filed August 20, 2012;

2.     Response Brief of Appellees Plaza N 15 Partners, LLC and Scott R. Buono (Doc. 45), filed September 4, 2012;

3.     Response Brief of Appellee, Richard Blackstone Webber, II (Doc. 46), filed September 6, 2012; and

4.     Reply Brief of Appellant (Doc. 50), filed September 24, 2012.

These consolidated appeals (Doc. 29) were taken from two orders of the Bankruptcy

Court, the "Sale Order" (Doc. 1-5[1]) and the "Overruling Order" (Doc. 20-4). After being fully briefed and having heard oral argument (Doc. 56), the Court hereby affirms the orders of the Bankruptcy Court, for the reasons set forth below.

## BACKGROUND

Appellant is Horizons A Far, LLC, a creditor of the Bankruptcy Estate. Appellees are: (1) Richard Webber, the Trustee; (2) Plaza N 15 Partners, LLC ("Partners"[2]); and (3) Scott Buono, the owner of 50% of Partners. Debtors are the Soderstroms; they owned the other 50% of Partners, which is now the property of the Estate at issue in these appeals.

The impetus for this dispute came when Appellant made an offer to Trustee to buy Debtors' 50% interest in Partners (along with other property in the Estate). (Doc. 39, p. 10.) Trustee accepted and filed a "Notice of Intent to Sell" the property to Appellant. (Doc. 2-4.) Buono, who owned the other half of Partners, objected. (Doc. 15-2.) Buono argued that without his consent as the other managing member of the LLC, Partners' Operating Agreement (Doc. 16-1, p. 3) allowed for the sale of only Debtors' limited economic interest in the LLC, not the full economic-and-management interest. (Doc. 15-2, ¶¶ 3–5.)

The Bankruptcy Court agreed, sustained Buono's objection, and partially granted Trustee's Notice of Intent to Sell, approving the sale of only Debtors' 50% economic interest in Partners. (Doc. 1-5, the "Sale Order.") The Sale Order relied on two grounds.

---

[1] The Sale Order (Doc. 1-5) was amended twice to correct scrivener's errors. (Docs. 1-6, 1-7.) Appellant appealed the Sale Order as well as the two subsequent amended orders, presumably out of an abundance of caution. (Doc. 1-1.) The Court will refer to all three collectively as the "Sale Order" herein, and the Court affirms them collectively, with the corrections made by the Bankruptcy Court.

[2] Plaza N 15 Partners, LLC ("Partners") is distinct from Plaza N 15, LLC ("PN15").

2

First, the Bankruptcy Court found that whatever interest Trustee acquired in Partners was subject to the consent restrictions in Partners' Operating Agreement. (*Id.* at 2.) Second, the Bankruptcy Court found that Trustee could not even acquire Debtors' management interest in Partners to begin with because of the applicability of Bankruptcy Code § 365. (Doc. 1-5, p. 2.) That section provides that a trustee may not assume an executory contract if applicable law excuses a contracting party from accepting performance from someone other than the debtor (whether or not the contract itself restricts assumption), and that party does not consent to the assumption. 11 U.S.C § 365(c)(1). The Bankruptcy Court found that: (1) Partners' Operating Agreement was an executory contract; (2) applicable law allows members of an LLC not to consent to a new managing member; and (3) Buono, a contracting party, did not consent to Appellant as a new managing member of Partners. (Doc. 15-1, pp. 2–3.) Therefore, under § 365, the Bankruptcy Court found that Trustee did not assume Debtors' management interest in Partners and only the economic interest was available for sale. (*Id.* at 3.)

Appellant then objected to the Sale Order—but not on the grounds that the Bankruptcy Court had made a mistake in allowing only Debtors' 50% economic interest in Partners to be sold. (Doc. 19-1.) Instead, Appellant asserted a wholly new argument: that as a creditor of the Estate, Appellant could compel the sale of 100% of Partners—both Debtors' and Buono's interests. (*Id.* at 1.) Appellant's argument relied on Bankruptcy Code § 363(h), which provides:

> [T]he trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had . . . an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>   (1) partition in kind of such property . . . is impracticable;

3

    (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; [and]
    (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners.

11 U.S.C. § 363(h). Appellant argued that Partners was co-owned by Buono and Debtors; that partition was impracticable because Partners was closely held; that a sale of 100% of Partners would realize significantly more assets for the Estate than a sale of Debtors' 50% economic interest only; and that any detriment to Buono was outweighed by the benefit to the Estate. (Doc. 19-1, pp. 4–5.)

    The Bankruptcy Court disagreed with Appellant's contentions and overruled its objection. (Doc. 20-4, the "Overruling Order.") The Overruling Order relied on five grounds. First, the Bankruptcy Court found that Appellant's argument that the sale should be of 100% of Partners (rather than Debtors' 50% economic interest only) was untimely because it was filed more than twenty-one days after Trustee's Notice of Intent to Sell; if Appellant wanted to object and propose a different sale, the Bankruptcy Court reasoned, it should have done so within the applicable time period. (*Id.* at 2.) Second, the Bankruptcy Court found that the issue of whether Trustee could sell 100% of Partners had already been litigated and was therefore foreclosed, in that the Bankruptcy Court had found that Trustee could not even sell Debtors' 50% full economic-and-management interest in Partners, let alone that plus Buono's interest. (*Id.* at 2–3.) Third, the Bankruptcy Court found that Partners was not a tenancy in common or a joint tenancy, making § 363(h) inapplicable to allow the sale of 100% of Partners. (*Id.* at 3.) Fourth, the Bankruptcy Court found that the buy-sell provisions of the Operating Agreement were also inapplicable to compel a sale of 100% of Partners, for the same

reasons that it previously found that Trustee could not sell Debtors' management interest—the Operating Agreement restricts membership transfer without consent. (*Id.*) Finally, the Bankruptcy Court found that Trustee had committed no abuse of discretion or manifest inequity such that it needed to interfere with Trustee's administration of the Estate. (*Id.* at 3–4.) Therefore, the Bankruptcy Court allowed the sale of only Debtors' 50% economic interest in Partners to proceed. (*Id.* at 4.)

Appellant appeals from both the Sale Order and the Overruling Order.[3] Appellant makes two principal arguments on appeal.

First, Appellant argues that the Sale Order denied it due process because it did not have notice and an opportunity to object to the economic-interest-only sale. (Doc. 39, p. 7.) Further, Appellant argues that the Bankruptcy Court erred in finding that Appellant's objection and 100%-sale proposal was untimely because it was filed too long after Trustee's original Notice of Intent to Sell. (*Id.* at 18.) Appellant asserts that the Bankruptcy Court mistakenly considered its objection to the economic-interest-only sale as a motion for reconsideration of the Sale Order, thereby finding that Appellant was foreclosed from relitigating previously litigated matters. (*Id.* at 17.)

Second, Appellant argues that the Bankruptcy Court erred in determining that Partners' Operating Agreement was an executory contract such that § 365 applied to prevent the Estate's assumption of Debtors' management interest in Partners. (*Id.* at 19.) Instead, Appellant urges that § 363(h) applies to allow the sale of 100% of Partners. (*Id.*)

---

[3] Appellant appealed the Sale Order (Case No. 6:12-cv-1164, Doc. 1-1) and the Overruling Order (Case No. 6:12-cv-1165, Doc. 1-1) separately. The Court consolidated those appeals. (Doc. 29.) Since consolidation, all activity in the case has been docketed in the lead case (Case No. 6:12-cv-1164). This Order disposes of both appeals.

5

During the pendency of these appeals, this Court stayed the sale of any interest in Partners. (Doc. 49.) This matter is now ripe for the Court's consideration.

## STANDARDS

The Court has jurisdiction over these appeals from the orders of the Bankruptcy Court, pursuant to 28 U.S.C. § 158. This Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions de novo. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009).

## DISCUSSION

### I. Procedural Issues

Due process requires notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Bankruptcy courts are authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). This power is construed broadly. *Cf. In re Gleason*, No. 12-11433, 2012 WL 4857014, at *2 (11th Cir. Oct. 15, 2012) (finding that bankruptcy court had not violated due process even where it held disciplinary hearings in the absence of any express rules authorizing such a procedure).

Appellant was put on notice of the economic-interest-only sale by the Sale Order. While Appellant insists that the Sale Order created an entirely new sale[4] (Doc. 39, p. 16), thereby denying Appellant notice of and opportunity to object to such a sale, the

---

[4] Even assuming *arguendo* that there was a "new" sale, that does not mean that due process was violated, as the Bankruptcy Court has broad powers to issue any order that it finds necessary to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The fact that the Bankruptcy Court did not force Trustee to file a new notice of intent to sell—as Appellant wanted the Bankruptcy Court to do—does not mean that the Bankruptcy Court erred or that Appellant did not receive the notice it was due. Furthermore, Appellant did not have to go through with the "new" sale if it did not like the terms, as Appellant admits. (Doc. 39, p. 16 n.11.)

record plainly demonstrates that is not the case. The Bankruptcy Court approved the sale of part, but not all, of what Appellant sought to buy, explicitly granted Trustee's Notice in part, and sustained the objections. (Doc. 1-5, entitled "Order Partially Granting Trustee's Notice of Intent to Sell and Sustaining Objections.") To maintain instead that the Sale Order overruled the objections, denied Trustee's Notice, and created an entirely different sale (Doc. 39, p. 16) in the face of that language is disingenuous.

Further, Appellant did have the opportunity to object to the economic-interest-only sale—whether it was a new sale or an altered version of the previously noticed sale—but chose not to do so. Instead of objecting to the Bankruptcy Court's approval of the sale of only Debtors' 50% economic interest, Appellant ignored the economic-versus-management interest issue entirely and predicated its objection on proposing a new 100%-interest sale. Simply because Appellant chose not to object to the sale as framed by the Bankruptcy Court does not mean that Appellant was denied due process. Appellant had the opportunity and decided instead to raise a new issue too late in the game—a trend in this litigation which is not lost on this Court. Thus, Appellant received all the process it was due.

Appellant also argues that the Bankruptcy Court erred in construing Appellant's objection as a motion for reconsideration and in finding that it was untimely. The construction of papers is a matter of law, and thus is reviewed de novo by this Court. *See, e.g.*, *Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 490 (1943).

As Appellees rightly note, there is "no other way to consider [Appellant's] Objection" (Doc. 45, p. 9) other than as a motion for reconsideration of the Sale Order because the time for objecting to the Notice of Intent had passed three months before. Therefore, on de novo review, this Court finds that the objection was properly

7

considered as a motion for reconsideration. If Appellant wanted to advance a 100% sale, it should have objected to the 50% sale that Trustee noticed within the proper time period; the Bankruptcy Court properly found that Appellant's 100% sale argument was both untimely and foreclosed for failure to raise it earlier.

Even though it considered the "objection" as a motion for reconsideration of the Sale Order, the Bankruptcy Court clearly allowed Appellant to frame its arguments as an objection. (Doc. 42-1, Tr. 4:15–17.) The timeliness issue was just one of several grounds upon which the Overruling Order rested and was not dispositive. The Overruling Order considered the substance of Appellant's 100%-sale argument; therefore, the procedural issues of construction of the motion and timeliness are essentially irrelevant. Appellant was heard on the merits, and those merits were properly rejected. The Court finds no error in the Bankruptcy Court's findings and procedure.

## II.    Executory Contract and § 365

"Whether a contract is executory within the meaning of the Bankruptcy Code is a question of federal law." *In re First Protection, Inc.*, 440 B.R. 821, 831 (9th Cir. BAP 2010). Therefore, the Bankruptcy Court's determination that Partners' Operating Agreement was an executory contract is reviewed de novo.

The U.S. Court of Appeals for the Eleventh Circuit has "tacitly" adopted the "functional approach" to whether a contract is executory, rather than the traditional approach, which examines whether both parties have outstanding material obligations under the contract. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 n.13 (11th Cir. 2007). Under the functional approach, "[e]ven though there may be material obligations outstanding on the part of only one of the parties to the contract, it may

nevertheless be deemed executory . . . if its assumption [] [or] rejection would ultimately benefit the estate and its creditors." *Id.* (citation and internal quotation marks omitted) (alterations in original).

If the contract is executory, then § 365 applies.[5] *First Protection*, 440 B.R. at 831 ("Thus, if the operating agreement is an executory contract as Debtors contend, § 365

---

[5] Appellant posits that instead of § 365, § 363 should apply to the sale of Partners. (Doc. 39, p. 24.) That section provides:

> [T]he trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had . . . an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) partition in kind of such property . . . is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; [and]
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners.

11 U.S.C. § 363(h).

The U.S. Court of Appeals for the Eleventh Circuit has held that § 363(h) is to be construed narrowly, to apply only to the forms of ownership listed: tenancies in common, joint tenancies, and tenancies by the entirety. *See, e.g.*, *In re Livingston*, 804 F.2d 1219, 1222–23 (11th Cir. 1986) (finding that a statutorily created "tenancy in common for life with a cross-contingent remainder in survivorship" was separate from a common law tenancy in common and therefore not subject to § 363(h)); *see also In re Sturman*, 222 B.R. 694, 709–11 (Bankr. S.D.N.Y. 1998) (finding that § 363(h) did not apply to property held as a tenancy in partnership under New York state law); *In re Normandin*, 106 B.R. 14, 15–16 (Bankr. D. Mass. 1989); *In re Manning*, 37 B.R. 755, 759 (Bankr. D. Col. 1984). In the instant case, the Bankruptcy Court likened Partners, an LLC, to a partnership and found that § 363(h) did not apply because Partners was not owned in a type of tenancy enumerated in the statute.

On de novo review of this legal determination, this Court finds that the principles of *Livingston* mandate the holding that § 363(h) does not apply to LLCs. The interest that LLC members own as part of an entity, as is the interest that partners share in a partnership, is wholly different than an undivided interest in property that co-owners own in a tenancy in common or joint tenancy. Appellant improperly conflates the ownership structure of the entire LLC with the ownership of solely Debtors' membership interest in Partners. Each member's share of the LLC—his membership interest—is his personal property; that share is the relevant property for the purposes of § 363(h). *See* Fla. Stat. § 608.431. Simply because the Debtors and the Buonos own equal halves of Partners

9

governs the trustee's rights rather than § 541(c)(1)."). That section provides that a trustee may not assume an executory contract if applicable law excuses a contracting party from accepting performance from someone other than the debtor, and that party does not consent. 11 U.S.C § 365(c)(1). Therefore, if Partners' Operating Agreement is deemed executory, then Trustee cannot assume and sell Debtors' management interest in the LLC because the other managing member—Appellee Buono—does not consent.

On de novo review, this Court finds that Partners' Operating Agreement is an executory contract. While Appellant assigns error to the Bankruptcy Court's application of the traditional rather than the functional approach to the question of executoriness, Appellant implicitly concedes that the contract would be executory under the latter test. A contract is executory under the functional approach "if its assumption [] [or] rejection would ultimately benefit the estate and its creditors." *Thompkins*, 476 F.3d at 1306 n.13. Appellant's argument rests on the notion that the sale of the full economic-plus-management interest will net more for the Estate and Appellant as a creditor than the sale of the economic interest only—that is, assumption of the management interest under the contract would ultimately benefit the Estate, precisely what makes a contract executory under the functional approach. (*See* Doc. 39, p. 28 ("[A] 100% Sale of Partners will achieve significantly more value than the Economic Interest Sale."); *id.* at 10–12 (arguing that the Bankruptcy Court was wrong to deny Appellant's original offer to purchase "the complete 50% interest in Partners" because the sale of the 50%

---

as an entity does not mean that they are "undivided co-owners" of the relevant "property" under § 363(h): Debtors' membership interest, which is Debtors' alone. Therefore, the Bankruptcy Court did not err in finding that § 363 does not apply to compel the sale of the whole of Partners.

economic interest only "devalued the estate's interest").) Accordingly, the Court finds that the Operating Agreement is executory under the functional approach.

Thus, any error of the Bankruptcy Court in applying the traditional approach rather than the functional approach was harmless because the contract is executory under either test. This Court agrees with the Bankruptcy Court that Trustee did not assume the management interest[6] in Partners and can sell only Debtors' 50% economic interest.[7] The Bankruptcy Court's judgment is therefore due to be affirmed.

---

[6] Appellant also asserts that the buy-sell provision of Partners' Operating Agreement allows Appellant to force Appellee Buono into selling his half of Partners. (Doc. 39, p. 21.) The buy-sell provision creates a procedure through which one member of the LLC could be forced to sell his share to the other in certain situations. (Doc. 16-1, pp. 27–28.)

The Bankruptcy Court rejected Appellant's contention, noting that Appellant was not a member of Partners and had no standing to invoke the buy-sell provision. (Doc. 20-4, p. 3.) Furthermore, the Operating Agreement's restrictions on transfer—the same consent provisions which restrict assumption of the management interest by Trustee—similarly operate to disallow the forced sale of members' management interests to Appellant. (*Id.*)

On this de novo question of the operation of a contract provision, this Court agrees with the Bankruptcy Court and finds that the buy-sell provision only applies to intra-member sales, not sales to third parties such as Appellant. Therefore, the buy-sell provision is inapplicable; there was no error in the Bankruptcy Court's conclusions on this issue.

[7] The Overruling Order further noted that Trustee has flexible control over the administration of the Estate. (Doc. 20-4, pp. 3–4.) "Generally, trustees have broad discretion in determining, in their own business judgment, how best to administer the estates to which they owe a fiduciary duty. . . . [T]he Court will not interfere with the Trustee's business judgment." *In re Rothstein Rosenfeldt Adler, P.A.*, 464 B.R. 465, 469–70 (Bankr. S.D. Fla. 2012).

Appellant argues that Trustee has "never voiced his business justification for advancing the Economic Interest Sale," and therefore, the Bankruptcy Court's reliance on Trustee's business judgment was erroneous. (Doc. 39, p. 26.)

However, Trustee stated at the hearing on Appellant's objection that he would only sell 100% of Partners "if the court finds that he's permitted to do so." (Doc. 42-1, Tr. 13:18–20.) Further, Trustee stated that he wanted to maximize the benefit to the Estate, but only in the ways he was legally allowed. (*Id.* at 13:8–15.)

Essentially, Trustee's statement of his business judgment was that he does not want to advance a sale that is legally unsound. This appears to be eminently sensible. The Bankruptcy Court considered Trustee's wide latitude in the administration of the

11

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The stay of the sale of the property at issue (Doc. 49) is **LIFTED**.

2. The Bankruptcy Court's orders (Doc. 1-5;[8] Doc. 20-4) are **AFFIRMED**.

3. These appeals are **DISMISSED**.

4. The Clerk is **DIRECTED** to close these cases.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 7, 2013.

*[signature]*

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

Estate and found that Trustee's reticence to participate in the 100% sale was well-founded—because such a sale was improper. As discussed above, there was no error in finding that Trustee could not sell 100% of Partners; therefore, there is no error on this issue.

[8] The Court collectively affirms the original and the amended sale orders (Docs. 1-5, 1-6, 1-7). *See supra* note 1.